IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| ALTURO PASCO, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| VS. | : | CIVIL ACTION FILE NO. |
| | : | **1 : 04-CV-97 (WLS)** |
| JAMIL SABA, | : | |
| | : | |
|     Defendant. | : | |

## RECOMMENDATION

Presently pending in this *pro se* prisoner § 1983 action are defendant's motion for summary judgment (Doc. 32) and plaintiff's motion to deny summary judgment to defendant. (Doc. 38).

At all times relevant to this lawsuit, plaintiff was a pretrial detainee at the Dougherty County Jail Facility[1], from March 18, 2004 until March 23, 2005. Defendant is the Sheriff of Dougherty County, responsible for the oversight of the Jail. Plaintiff alleges that his constitutional rights have been violated in that he was denied visitation with his two children, ages 7 and 9; that the "collect call" telephone system at the Jail is oppressive, restrictive, and unduly burdensome; and that the Jail's policy regarding receipt of pen, paper, stamps, and envelopes to indigent inmates is unduly burdensome.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio corp., 475

---

[1] Plaintiff has since been convicted and is presently an inmate within the Georgia Department of Corrections.

U.S. 574 (1986)).  However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Visitation Policies*

According to the "Inmate Handbook" which is provided to all occupants of the Jail, visitation

is limited to persons sixteen years of age or older. (Exhibit A , page 18, Doc. 34). Defendant has also submitted an affidavit from Col. McGinley, who is the Jail Administrator, stating that the Jail Administration created the rule for an age limit on visitors to the Jail for several reasons, based upon their education, training, and experience. ( McGinley Aff. Doc. 34). Col. McGinley states that such a rule is reasonable and necessary to ensure jail security and orderly operations, and that the policy is necessary for the safety of children under age sixteen, who may be left unattended, causing concern for their safety, and causing an atmosphere of disruption. Also of concern is the need to conduct physical searches of children who enter the facility, as everyone who enters the facility is subject to search. The Jail Administration wished to avoid having to conduct physical searches on children for contraband and other items.

   Also stated as a concern is the disruptive and disorderly atmosphere that may result in an infringement on the rights of other inmates' ability to exercise their visitation if children were allowed in the visitation areas. Additionally cited as a concern is negative perception by the children of the detainees of jail officials who were confining their parent.

    Plaintiff also complains that visitation occurs in a small room where inmates are separated by a wall from visitors and no physical contact is possible, and that speaking with visitors through holes in a glass window is unduly burdensome, making it difficult to hear or carry on a private conversation. Plaintiff concludes that the 15 minutes per week he was allowed with his wife is unduly burdensome and restrictive.

     In support of his opposition to defendant's motion for summary judgment, plaintiff has submitted his affidavit and that of his wife, Heather Pasco. (Doc. 39) Both confirm that plaintiff was restricted to fifteen minute, weekly visitations with his wife, fifteen minute telephone calls,

a lack of privacy to have a conversation during visitation, and the inability of plaintiff's children to visit with him during his time at the Dougherty County Jail. Plaintiff also claims that his request to have his wife take up all of the three weekly fifteen minute visits was rejected unfairly. Plaintiff also claims that because of the inability to carry on a reasonably private conversation with his wife, who was a witness in his pending criminal trial, he was deprived of a meaningful opportunity to build a "strategic defense" for fear that another inmate would overhear the conversation and attempt to curry favor with the District Attorney by using the conversation against plaintiff.

*Telephone Calls*

Plaintiff alleges that access to telephone services is unduly restrictive in that the cost of the calls is excessive, the call duration of 15 minutes is too short, and certain persons will not accept collect telephone calls.

*Indigent Mailing Supplies*

The Dougherty County Jail Facility provides a certain amount of pen, paper, stamps, and envelopes to indigent inmates according to the Inmate Handbook. (Exhibit B, page 14, Doc. 34) Plaintiff states that he sometimes had to wait fifteen days before receiving writing materials. Plaintiff also describes the indigent postage as unreasonably restrictive, in that an inmate must qualify, i.e. have less than $3.00 in his account, for 15 consecutive days, before being eligible for pens, paper, etc... and then must retain this eligibility in order to receive a re-supply every 15 days. Plaintiff states that he needed more supplies, as he was at that time litigating six different legal cases, communicating with his wife and children, and communicating with his criminal defense attorney.

4

**1. Mootness**

Defendant asserts that all of these claims should be dismissed based upon the doctrine of mootness. Article III of The Constitution limits the jurisdiction of the federal courts to actual cases and controversies; in order to satisfy this requirement a plaintiff must have suffered some actual injury that can be remedied or redressed by a favorable judicial decision. National Advertising Co. V. City of Ft. Lauderdale, 934 F.2d 283, 285-286 (11th Cir. 1991).

Defendant argues that plaintiff is no longer incarcerated at the Dougherty County Jail as a pre-trial detainee, as he is a convicted felon currently serving his sentence with the Georgia Department of Corrections. Therefore, defendant states that plaintiff's claims for injunctive relief should be dismissed as moot.

Plaintiff, conversely, argues that it is in fact probable that he will return to the Dougherty County Jail, as he continues to be involved in several separate cases against this defendant as well as other officials from the jail, including several that are currently pending in this court. Plaintiff even attaches to his response (Doc. 39) a copy of a request from a defense attorney that plaintiff be present at a hearing in Dougherty County Superior Court, thereby necessitating plaintiff's stay at the jail.

However, even if plaintiff does return to the Dougherty county Jail Facility, he will not be returning in the same status as a pretrial detainee, entitled to certain protections, but rather would be a convicted inmate, to whom certain protections are not available. In contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a pretrial detainee] is whether [confinement] conditions amount to punishment of the [unadjudicated] detainee" under

the Due Process Clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 1872 & n. 16, 60 L.Ed.2d 447 (1979).

Consequently, the undersigned finds that plaintiff's request for prospective, injunctive relief should be dismissed for mootness.

**2. Eleventh Amendment Immunity/Official Capacity**

Defendant also asserts that he is entitled to summary judgment in his official capacity as he is protected by Eleventh Amendment immunity.  The Eleventh Circuit has determined that Georgia Sheriffs are entitled to Eleventh Amendment immunity in their official capacities because they function as an arm of the state in establishing and administering jail policies and practices. Purcell v. Toombs County, 400 F.3d 1313 (11th Cir. 2005); Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003)( en banc).

It appears that defendant is in fact entitled to summary judgment in his official capacity.

**3. Qualified Immunity**

Defendant also asserts he is entitled to qualified immunity in his individual capacity. Qualified immunity was established by the United States Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1992).  The Court held that the complaint must be dismissed whenever a defendant asserts the defense of qualified immunity unless the plaintiff is able to demonstrate that the legal norms allegedly violated by the defendant were violations of clearly established constitutional rights.  In fact, the Eleventh Circuit has provided more guidance in another § 1983 case in stating that qualified immunity can be stripped only when all reasonable government actors in the defendant 's place would know that the discretionary conduct in question violated federal law.  Adams v. Poag, 61 F.3d 1537 (11 $^{th}$ Cir. 1996).

Once properly asserted, there is entitlement to qualified immunity if either (1) the applicable law was not clearly established at the time of the alleged violation, or (2) plaintiff fails to demonstrate the existence of genuine issues of material fact as to whether the official's actions violated the clearly-established law.  Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988).

The Eleventh Circuit has held that in order to overcome the defense of qualified immunity, the plaintiff   "must show that defendants violated [plaintiffs'] clearly established federal rights and that every reasonable officer faced with the circumstances facing these defendants would have known that defendants' acts were unlawful."  Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994).

Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff.  See, e.g.,  Suissa v. Fulton County, 74 F.3d 266, 269 (11th Cir.1996);  Barnette v. Folmar, 64 F.3d 598, 600 (11th Cir.1995);  Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150 n. 3 (11th Cir.1994).

The undersigned can find no Supreme Court case that pretrial detainees are absolutely entitled to visitation with their minor children; nor has plaintiff quoted any such precedent.  Plaintiff has quoted cases from other circuits that allow for visitation with minor children.  However, such is not the case here in the Eleventh Circuit.

The United States Supreme Court accords substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them.

 In contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a

pretrial detainee] is whether [confinement] conditions amount to punishment of the [unadjudicated] detainee" under the Due Process Clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 1872 & n. 16, 60 L.Ed.2d 447 (1979); see Villarreal v. Woodham, 113 F.3d 202, 207 (11th Cir.1997) (recognizing that confinement of pretrial detainees is a "necessary restriction" to ensure their presence in court).

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. " The fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" Bell, 441 U.S. at 537, 99 S.Ct. at 1873. The Supreme Court has noted that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981).  The Court's decisions in this area counsel that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

In analyzing confinement conditions about which a pretrial detainee complains, a court must decide whether the detention officials intentionally imposed the restriction for a punitive purpose or whether it is reasonably incidental to a legitimate government objective. See Bell, at 538-39, 99 S.Ct. at 1873-74; Villarreal, 113 F.3d at 207. "If a restriction is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court may infer that the purpose of the government action is punishment." Lynch v. Baxley, 744 F.2d 1452, 1463 (11th Cir.1984).

Additionally, the Eleventh Circuit evaluates particular pretrial detainee complaints against the totality of confinement conditions to determine if there is constitutional deficiency. See Hamm v. DeKalb County, 774 F.2d 1567, 1575-76 (11th Cir.1985).

"[P]reserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell, 441 U.S. at 546, 99 S.Ct. at 1878; see Hamm, 774 F.2d at 1573 ("Legitimate restraints may stem from the state's need to manage the detention facility and maintain security."). Prison officials have "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547, 99 S.Ct. at 1878.  Incarceration of pretrial detainees necessarily entails some restrictions on them.  Absent "an express intent to punish on the part of prison officials, such a restriction is valid if 'an alternative purpose to which [the restriction] may rationally be connected is assignable for it' unless 'it appears excessive in relation to the alternative purpose assigned [to it].'" Bell, at 538. (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).  Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell at 539.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." 441 U.S., at 539, 99 S.Ct., at 1874 (footnote and citation omitted).

In setting forth these guidelines, the Supreme Court reaffirmed the very limited role that courts should play in the administration of detention facilities. In assessing whether a specific

restriction is "reasonably related" to security interests, courts should "heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters. Id., at 540-541, n. 23, 99 S.Ct., at 1874-1875, n. 23 (quoting Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)).

The restrictions on children's visitation are related to the Dougherty County Jail Facility's valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct or from accidental injury. They promote internal security, perhaps the most legitimate penological goal, by reducing the total number of visitors and by limiting disruption caused by children. Second, detainees at the jail have alternative means of exercising their asserted right of association with those prohibited from visiting. They can send messages through those who are permitted to visit, and can communicate by letter and telephone. Visitation alternatives need not be ideal; they need only be available.

Similarly, the visitation conditions at the jail is also reasonably related to a legitimate penological goal. There is no due process right to "unfettered visitation." Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904 (1989). Visitation between inmates and the general public at the Jail are limited in time and space for the safety of the inmates, visitors, and jail staff. (McGinley Affidavit Doc. 34)

As to the collect telephone call system at the jail, "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls." Johnson v. State of California, 207 F.3d 650, 656 (9th Cir. 2000).

Plaintiff's complaints regarding the receipt of paper, pen, stamps, and envelopes must similarly fail.  Plaintiff admits that he has received the materials in accordance with the Jail's written policy.  Therefore, he has not been deprived of writing materials - his complaint is that he did not have enough in order to prosecute his many civil lawsuits filed in this court and elsewhere.

Plaintiff cannot seriously allege that he has been denied access to the courts as a result of not having enough writing materials.  As established in Lewis v. Casey, to successfully allege a constitutional violation based upon a denial of access to courts, plaintiff must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved. 518 U.S. at 349-51. Importantly, the injury requirement is not satisfied by just any type of frustrated legal claim." Id., 518 U.S. at 354. Plaintiff must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action under 42 U.S.C. § 1983 "to vindicate basic constitutional rights.'  Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Furthermore, he must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of defendants' actions. Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir.1998) (citing Lewis); see also Bass v. Singletary, 143 F.3d 1442, 1445-46 (11th Cir.1998). So long as plaintiff was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts. Wilson, 163 F.3d at 1291.  Plaintiff has failed to show how he was prejudiced.  Plaintiff has continued to litigate several civil lawsuits while detained at the Dougherty County Jail.

Consequently, it is the opinion of the undersigned that defendant is entitled to official and qualified immunity.  It is the RECOMMENDATION of the undersigned that defendant's motion

11

for summary judgment be **GRANTED** and that plaintiff's motion to deny defendant's motion be **DENIED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 29th  day of August, 2006.

        /S/ Richard L. Hodge
        RICHARD L. HODGE
        UNITED STATES MAGISTRATE JUDGE